**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Lynn Michael, | No. CV-22-00254-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| FCA US LLC, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 10.) This matter has been fully briefed. (Docs. 10–11, 19–20, 25.) At Defendant's request, the Court held oral argument on February 28, 2023. As fully explained below, the Court will deny the Motion.

## I.  BACKGROUND

Plaintiff Brittany Michael is suing Defendant FCA US LLC on behalf of herself and the statutory beneficiaries of her late husband, David Pope. (Doc. 1.) Mr. Pope died when, apparently "fighting fatigue," he crashed into the embankment off the side of the highway in Pinal County, Arizona. (*Id.* at 6.) At the time of his fatal accident, Mr. Pope was driving a 2021 RAM 5500 chassis cab tow truck manufactured and distributed by Defendant. (*Id.* at 2.)

Plaintiff alleges that Defendant had available at least two additional safety features that would have prevented the accident—Drowsy Driver Detection[1] and LaneSense Lane

---
[1] Plaintiff has not alleged that Drowsy Driver Detection was offered as an optional safety

Departure Warning Plus/Lane-Keep Assist—but chose not to install one or both of these features as a standard safety component of the 2021 RAM 5500. (*See id.* at 11–13, 15.) Count One is a strict product liability claim alleging Defendant manufactured and distributed a vehicle with a defective and unreasonably dangerous design by failing to install either feature. (*Id.* at 16–18.) Count Two alleges Defendant was negligent in its development and use of the vehicle with a defective and dangerous design. (*Id.* at 18–19.) Finally, Count Three alleges Defendant's wrongful conduct led to Mr. Pope's death under Arizona Revised Statutes § 12-611. (*Id.* at 19–21.)

On July 27, 2022, Defendant filed a Motion for Summary Judgment arguing that it is entitled to judgment because manufacturers do not owe a duty to install premium safety features. (Doc. 10.)

## II. STANDARD OF REVIEW

A court grants summary judgment if, viewing the pleadings and supporting documents in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[T]o carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). At that point, the burden

---

feature, for an additional cost, on the 2021 RAM 5500 like Lane-Keep Assist. (Doc. 1 at 13.) However, Plaintiff does allege that Drowsy Driver Detection was offered by Defendant on another of Defendant's vehicles, the Jeep Grand Cherokee Summit. (*Id.* at 11.)

shifts to the non-moving party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). However, if the movant fails to carry its initial burden of production, the nonmovant need not produce *anything*. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03.

At summary judgment, the Court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, the Court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Summary judgment is rarely granted in negligence cases because the issue of '[w]hether the defendant acted reasonably is ordinarily a question for the trier of fact.'" *Christensen v. Georgia-Pac. Corp.*, 279 F.3d 807, 813 (9th Cir. 2002).

### a. Prima Facie Case – State Law Claims

A district court applies state law to products liability claims brought pursuant to diversity jurisdiction. *Adams v. Synthes Spine Co.*, 298 F.3d 1114, 1117 (9th Cir. 2002). In Arizona, a prima facie case for strict product liability requires the plaintiff show "that the product was in a defective condition that made it unreasonably dangerous, that the defective condition existed when the product left the defendant's control, and that the defective condition proximately caused the plaintiff's injuries . . . ." *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002). The plaintiff need not show that the manufacturer was negligent because they are strictly liable for any damages caused by using a product that is either defective or unreasonably dangerous as designed. *See Brethauer v. Gen. Motors Corp.*, 211 P.3d 1176, 1182 (Ariz. Ct. App. 2009).

There are two tests to determine whether a product is defective or unreasonably dangerous under strict liability: the consumer expectation test and the risk/benefit analysis. *Id.* Under the first, the manufacturer is strictly liable if the product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner." *Id.* A manufacturer is strictly liable under the second test if "the benefits of [a]

challenged design . . . outweigh the risk of danger inherent in [the] design." *Id.* (quoting *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003)). In either test, the focus is on the quality of the product, not the conduct of the defendant.

On the other hand, "[i]n order to succeed on a negligent design claim, a plaintiff must prove that the manufacturer acted unreasonably at the time of design or manufacture in light of the foreseeable risk of injury from use of the product." *Hess v. Bumbo Int'l Trust*, CV 13-944 TUC DCB, 2014 WL 12527216, at *7 (D. Ariz. Sept. 11, 2014) (quoting *Feurerstein v. Home Depot*, No. 2:12–cv–01062 JWS, 2014 WL 2557122, at *5 (D. Ariz. June 6, 2014)).

An action for wrongful death is provided for by Arizona Revised Statute § 12-611. "A plaintiff seeking to recover damages for wrongful death must prove: (1) the defendant had a duty to conform to a certain standard of care; (2) a breach of the standard of care by the defendant; and (3) a causal connection between defendant's conduct and the death." *Chicharello v. State*, No. 1 CA–CV 13–0523, 2014 WL 6678077, at *1 (Ariz. Ct. App. 2014) (citing *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (en banc)).

**III.   DISCUSSION**

Defendant urges the Court to grant summary judgment in its favor because Plaintiff has failed to establish the element of duty for either her strict product liability or negligence claims. (Doc. 10 at 5–14.) Specifically, Defendant argues that Arizona does not recognize the duty it alleges Plaintiff seeks to impose; that is, a duty to install "only the ultimate in safety features." (*Id.* at 5.)

Defendant cites an opinion from the Arizona Court of Appeals to argue that state law clearly establishes manufacturers owe "no legal obligation to produce a product incorporating only the ultimate in safety features." (*Id.* at 2 (quoting *Morrow v. Trailmobile, Inc.*, 473 P.2d 780, 786 (Ariz. Ct. App. 1970)).) *Morrow* upheld the trial court's directed verdict for the defendant manufacturer after trial testimony concluded because the plaintiff failed to establish a prima facie case for negligent design. 473 P.2d at 786. The referenced language appears at the end of the opinion when the court assessed whether it was proper to exclude certain expert testimony. *Id.* The court found that "[e]xpert

testimony that the design adopted by defendants was not the safest available does not constitute proof of negligence since a manufacturer has no legal obligation to produce a product incorporating only the ultimate in safety features." *Id.* In other words, the court's statement did not negate the defendant's duty. It underscored the court's finding that "plaintiff failed to prove that defendants breached any duty owed to plaintiff's decedent . . . ." *Id.* at 784. The other cases cited by Defendant for this same assertion do not compel a different reading.

This illustrates the difficulty with Defendant's argument for why it is entitled to summary judgment—Defendant has confused the question of the duty it owed with the question of whether it breached that duty. One is a matter of law that the Court is apt to determine at summary judgment. The other is a highly fact-specific inquiry over which Plaintiff has raised a genuine dispute of material fact.

In Arizona, "[t]he existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case" because "[a]s a legal matter, the issue of duty involves generalizations about categories of cases" whereas whether the defendant's conduct conformed to its duty involves the specific facts of the case at hand. *Gipson*, 150 P.3d at 230. Defendant itself concedes that it owes a duty to all consumers "to make a product that is *reasonably* safe for its intended use." (Doc. 10 at 2.) This is precisely the duty that Plaintiff claims Defendant breached by not installing Drowsy Driver Detection and/or LaneSense. (*See* Doc. 19 at 2–3.) Even assuming her theory of breach is novel, Plaintiff is not seeking to impose a *new* duty on Defendant, contrary to what Defendant asserts.

As to the negligence claim, Plaintiff alleges that Defendant owed a duty to "use reasonable care to design its products so as to make it safe for intended uses." (*Id.* at 2 (quoting *Mather v. Caterpillar Tractor Corp.*, 533 P.2d 717, 719 (Ariz. Ct. App. 1975).) Similarly, as to the strict product liability claim, Plaintiff asserts Defendant owed a duty not to "distribute[] a defective and unreasonably dangerous product." (*Id.* at 3 (quoting *State Farm Ins. Cos. V. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 417 (Ariz. 2007) (en banc))*.*)

Accordingly, Defendant has not carried its initial burden to negate an essential element of Plaintiff's claim(s) in its Motion for Summary Judgment by arguing that, as a matter of law, it owed no duty to install premium features on the 2021 RAM 5500. There is no question—nor even dispute between the parties—that Defendant owed a duty to consumers to produce a reasonably safe vehicle. Whether the 2021 RAM 5500 was reasonably safe without Drowsy Driver Detection or LaneSense is a related but separate question of breach. Put another way—to use the language that Defendant highlights from the case law—Defendant has not established that Drowsy Driver Detection and LaneSense constitute "only the ultimate in safety features" such that their exclusion did not create an unreasonably dangerous vehicle.

While Defendant spends the majority of its Motion and Reply outlining reasons why it does not owe this specific duty to Plaintiff, it does touch briefly on the question of breach (i.e., on the safety of the 2021 RAM 5500 without Drowsy Driver Detection or LaneSense). (*See* Doc. 10 at 3; Doc. 25 at 8–9.) Defendant emphasizes that the vehicle was equipped with an "anti-lock braking system, brake assist system, electronic brake force distribution, and electronic stability control." (Doc. 10 at 3.) Thus, Defendant argues Plaintiff "must prove how a vehicle equipped with brakes that an attentive driver could use to stop or avoid a crash is defective and unreasonably dangerous when the driver fell asleep at the wheel." (Doc. 25 at 8.)

Defendant is correct. If this case proceeds to trial, Plaintiff is tasked with convincing a jury that the 2021 RAM 5500 was defective and unreasonably dangerous without Drowsy Driver Detection or LaneSense as standard—rather than optional—features. But Defendant's reference to the vehicle's safety systems is insufficient to meet its initial burden on summary judgment to "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins., Co.*, 210 F.3d at 1102.

Thus, viewing the pleadings and supporting documents in the light most favorable to Plaintiff, Plaintiff has come forth with sufficient information to raise a genuine dispute

- 6 -

of material fact as to whether the 2021 RAM 5500 was defective or unreasonably dangerous. (*See* Doc. 19 at 13–16.) The Court makes no other determination as to the truth or credibility of Plaintiff's claims other than to observe that a reasonable factfinder could resolve the issue for Plaintiff either because the 2021 RAM 5500 "failed to perform as safely as an ordinary consumer would expect," or "the benefits of [a] challenged design . . . outweigh the risk of danger inherent in [the] design," *Brethauer*, 211 P.3d at 1182, or "the manufacturer acted unreasonably at the time of design or manufacture in light of the foreseeable risk of injury," *Hess*, 2014 WL 12527216, at *7.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**. (Doc. 10.)

Dated this 13th day of March, 2023.

Honorable Raner C. Collins
Senior United States District Judge